UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL RETAIL FEDERATION,

                          Plaintiff,

- against -

LETITIA JAMES, in her official capacity as Attorney General of New York,

                          Defendant.

Case No. 1:25-cv-5500-JSR

---

**DECLARATION OF CHRISTOPHER D'ANGELO IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**CHRISTOPHER D'ANGELO**, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am Chief Deputy Attorney General for Economic Justice in the Office of the New York State Attorney General ("OAG"), and attorney for Defendant LETITIA JAMES ("Defendant"), in her official capacity as New York State Attorney General, in the above-captioned action. I am familiar with the matters set forth herein based upon my personal knowledge and on the basis of documents that have been created or reviewed by me in the ordinary course of business.

2. I submit this declaration in opposition to Plaintiff National Retail Federation's ("Plaintiff") motion for a preliminary injunction.

**I.     Background**

3. OAG has taken an active role to protect consumers and members of the public from new and developing online threats. For example, OAG has issued a guide to inform consumers about website tracking tools, including recommendations on how to protect their online privacy

and limit online tracking. *See* A Consumer Guide to Web Tracking, https://ag.ny.gov/publications/consumer-guide-web-tracking (last visited August 14, 2025).

4. In recent years, OAG has focused its attention upon the emerging risks resulting from artificial intelligence (AI) technology. In April 2024, OAG convened a symposium regarding the opportunities and risks presented by AI technology. OAG is also in the process of developing rules to implement the Stop Addictive Feeds Exploitation (SAFE) For Kids Act, enacted by the State of New York in 2024. The SAFE For Kids Act addresses the children's mental health crisis caused by social media companies' use of algorithmic social media feeds, often referred to as "addictive feeds." The SAFE For Kids Act prohibits social media platforms from providing an addictive feed to minors without obtaining "verifiable parental consent." N.Y. Gen. Bus. Law § 1501(1)(b).

## II. Overview of the Algorithmic Pricing Disclosure Act

5. In addition to the SAFE For Kids Act, OAG has been tasked with enforcement of the Algorithmic Pricing Disclosure Act ("Act"), which was enacted by the State of New York on May 9, 2025, and codified in N.Y. Gen. Bus. Law § 349-a. The Act aims to create transparency for consumers related to companies' growing use of algorithmic pricing. As detailed in Defendant's memorandum of law in opposition to Plaintiff's motion (*see* pp. 3-6), companies utilize algorithms that harvest consumers' personal data to set different prices for consumers who purchase the same product or service. In addition, companies have been found to use algorithms to vary prices by zip code, with patterns suggesting discrimination.

6. The Act does not restrict the use of algorithmic pricing itself, but requires companies to include a "clear and conspicuous" disclosure stating that "THIS PRICE WAS SET BY AN ALGORITHM USING YOUR PERSONAL DATA." N.Y. Gen. Bus. Law § 349-a(2).

The disclosure is intended to enable consumers to make an informed decision regarding products and services that are priced using algorithms.

7. The Act defines "clear and conspicuous" to mean "disclosure in the same medium as, and provided on, at, or near and contemporaneous with every advertisement, display, image, offer or announcement of a price for which notice is required, using lettering and wording that is easily visible and understandable to the average consumer." N.Y. Gen. Bus. Law § 349-a(1)(b). OAG interprets this statutory definition as providing covered entities with discretion to format the disclosure, so long as it is "easily visible and understandable to the average consumer." OAG does not interpret the definition as mandating a specific "length and size" akin to the Surgeon General's warning on cigarette packages and advertisements.

8. The Act also contains narrow exceptions to the disclosure requirement in § 349-a(2). For example, the definition of "personal data" excludes location data used by for-hire vehicles, or transportation network company vehicles, "solely to calculate the fare based on mileage and trip duration between the passenger's pickup and drop-off locations." N.Y. Gen. Bus. Law § 349-a(1)(d). The exception is included because consumers are aware that they will see the price for the distance traveled between the "pickup and drop-off locations." The disclosure requirement is thus unnecessary in this situation.

9. In addition, the Act includes exceptions for (a) persons or entities subject to applicable insurance laws and regulations; (b) financial institutions and affiliates subject to Title V of the Gramm Leach Bliley Act (15 U.S.C. § 6801, *et seq.*, as amended) as well as the statute's rules and implementing regulations; and (c) financial institutions "as defined in subsection (f) of section eight hundred one of the financial services law" of New York State. *See* N.Y. Gen. Bus. Law § 349-a(3)(a), (b) and (c). The Act does not cover these insurance and financial entities given

that they are already heavily regulated at the federal and state levels, and are subject to separate disclosure requirements.

10.     Finally, the Act includes an exception for a price offered to consumers with existing subscription-based contracts or agreements for goods or services with an entity, where the price offered is *less* than the price for the same good or service set forth in the agreement or contract. N.Y. Gen. Bus. Law § 349-a(3)(d). Because the exception is narrowly limited to prices offered below an existing subscription agreement or contract, the concern about personal data being used to charge consumers a higher price is not present.

### III.     OAG's Enforcement Authority Under the Act

11.     The Act, which became effective on July 8, 2025, confers enforcement authority upon OAG. *See* N.Y. Gen. Bus. Law § 349-a(4). In particular, OAG retains the authority to issue a cease and desist letter to an entity "specifying the alleged violation or violations and the remedies to cure the violations within a designated timeline." *Id.* Pursuant to this provision, there is no penalty for a first-time offense, and OAG will cooperatively engage with the entity to remedy the violation.

12.     In the event that the entity continues to violate the Act after the expiration of the time period, OAG retains the authority to make an application in New York state court to enjoin and restrain the continuance of the violation(s), with a $1,000 civil fine imposed for each violation. N.Y. Gen. Bus. Law § 349-a(4).

13.     OAG agreed to a stay of enforcement of the Act pending a decision on Plaintiff's motion for a preliminary injunction. (ECF No. 16) OAG has not issued any cease and desist letters based upon this agreed-upon stay of enforcement.

Dated: August 15, 2025
New York, New York

_____
Christopher D'Angelo