# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
NATIONAL RETAIL FEDERATION,                       :
                                                  :
                              Plaintiff,          :
                                                  :
           -against-                              :   Case No. 1:25-cv-05500 (JSR)
                                                  :
LETITIA JAMES, in her official capacity as        :
Attorney General of New York,                     :
                                                  :
                              Defendant.          :
------------------------------------------------- x
```

## BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Megan L. Brown*
Jeremy J. Broggi*
Boyd Garriott*
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
jbroggi@wiley.law

*Counsel for Amicus Curiae,
Chamber of Commerce of the
United States of America*

August 21, 2025                 *Pro Hac Vice*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii
INTRODUCTION AND INTEREST OF AMICUS CURIAE ....................................................... 1
ARGUMENT ............................................................................................................................ 2
    I.    The Act Is Subject To Strict Scrutiny. ............................................................................ 2
        A.    The Act Is Content- And Viewpoint-Based. ................................................. 2
        B.    The *Zauderer* Standard Does Not Apply. ...................................................... 5
    II.    The Act Fails Any First Amendment Standard Of Review. ..................................... 6
        A.    Satisfying Consumer Curiosity Is Not A Legitimate Government Interest. 6
        B.    The Disclosure Requirement Is Unjustified And Unduly Burdensome. ...... 8
CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Meat Institute v. U.S. Department of Agriculture*,
　760 F.3d 18 (D.C. Cir. 2014)......................................................................7, 8

*Barr v. American Asssociation of Political Consultants, Inc.*,
　591 U.S. 610 (2020)..................................................................................2, 3

*Dana's Railroad Supply v. Attorney General, Florida*,
　807 F.3d 1235 (11th Cir. 2015) .....................................................................4

*Department of Commerce v. New York*,
　588 U.S. 752 (2019).......................................................................................9

*Edenfield v. Fane*,
　507 U.S. 761 (1993).......................................................................................9

*Entertainment Software Association v. Blagojevich*,
　469 F.3d 641 (7th Cir. 2006) .......................................................................10

*Greater Philadelphia Chamber of Commerce v. City of Philadelphia*,
　949 F.3d 116 (3d Cir. 2020)...........................................................................4

*International Dairy Foods Association v. Amestoy*,
　92 F.3d 67 (2d Cir. 1996)......................................................................6, 7, 8

*Kennedy v. Bremerton School District*,
　597 U.S. 507 (2022)...................................................................................6, 7

*Matal v. Tam*,
　582 U.S. 218 (2017).......................................................................................4

*Merck & Co. v. HHS*,
　962 F.3d 531 (D.C. Cir. 2020).......................................................................6

*National Association of Manufacturers v. SEC*,
　800 F.3d 518 (D.C. Cir. 2015)..................................................................4, 10

*National Institute of Family & Life Advocates v. Becerra*,
　585 U.S. 755 (2018)............................................................2, 3, 5, 6, 7, 8, 11

*NRA v. Vullo*,
　602 U.S. 175 (2024).......................................................................................2

*Poughkeepsie Supermarket Corp. v. Dutchess County, New York*,
　648 F. App'x 156 (2d Cir. 2016) ..................................................................6, 7

*Reed v. Town of Gilbert, Arizona*,
　576 U.S. 155 (2015)...................................................................................2, 3

*Rosenberger v. Rector & Visitors of University of Virginia*,
　515 U.S. 819 (1995)........................................................................................2

*Safelite Group, Inc. v. Jepsen*,
　764 F.3d 258 (2d Cir. 2014)........................................................................5, 7

*Sorrell v. IMS Health Inc.*,
　564 U.S. 552 (2011)...................................................................................3, 4

*The Intercept Media, Inc. v. OpenAI, Inc.*,
　767 F. Supp. 3d 18 (S.D.N.Y. 2025)................................................................8

*Volokh v. James*,
　__ F.4th ____, 2025 WL 2177513 (2d Cir. Aug. 1, 2025) ................................3, 4, 5

*W.D., Inc. v. Destito*,
　879 F.3d 20 (2d Cir. 2018)..............................................................................4

*Walker v. Schult*,
　45 F.4th 598 (2d Cir. 2022) ............................................................................8

*X Corp. v. Bonta*,
　116 F.4th 888 (9th Cir. 2024) .........................................................................7

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
　471 U.S. 626 (1985).......................................................................................5

**Statutes**

New York General Business Law § 349-a.................................................3, 4, 10, 11

**Other Authorities**

Kristen Capunay, *The Differences Between Product Businesses vs. Service Businesses*, CO (July 7, 2025),
　https://www.uschamber.com/co/grow/sales/differences-in-selling-products-and-services...............................................................................................11

Personalised Pricing in the Digital Era - Note by the United States, OECD (Nov. 2018), https://tinyurl.com/yc3cdmfk ......................................................9

Richard F. Duncan, *Viewpoint Compulsions*, 61 Washburn L.J. 251 (2022) ..................2

Senate Bill S7033, Senate Sponsor Memo (2025), https://tinyurl.com/mu5jdabe ............3, 7, 8, 10

U.K. Competition & Markets Authority, Loyalty Pricing in the Groceries Sector,
    Summary (Nov. 27, 2024), https://tinyurl.com/yv5cspd4 .........................................................9

# INTRODUCTION AND INTEREST OF AMICUS CURIAE

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus curiae briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber has a crucial interest in the resolution of this case. New York's Algorithmic Pricing Disclosure Act ("the Act") will require businesses operating in the State to recite an ominous, government-mandated script whenever they use an algorithm to tailor prices and offers to individual customers. This compelled speech will create the false impression that algorithmic pricing deserves suspicion and skepticism. Worse still, the Act compels businesses to distribute New York's misleading message at the most critical moment for a company: when it asks a customer for his or her business. The result will be to harm all businesses—including the Chamber's members—that use algorithmic pricing to offer their potential customers a lower price. And this harm will be particularly acute for businesses that offer services, which rely heavily on forging positive customer experiences. Consumers will be harmed too, as many businesses are likely to forego beneficial algorithmic pricing altogether, rather than recite a state-mandated script that wrongly requires them to disparage their own offer.

This Court should reject New York's attempt to toss this case before it has even begun. Plaintiff National Retail Federation's ("NRF") Complaint easily clears the plausibility bar in showing that the Act violates the First Amendment on its face and as applied. The Act is subject to strict scrutiny because it regulates speech based on content and viewpoint. Regardless, the

1

State's motion to dismiss confirms that the Act cannot survive any level of First Amendment review, including *Zauderer* review.

The Court should deny the State's motion to dismiss and grant NRF's motion for a preliminary injunction.

**ARGUMENT**

I. THE ACT IS SUBJECT TO STRICT SCRUTINY.

A. The Act Is Content- And Viewpoint-Based.

"Above 'all else, the First Amendment means that government' generally 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618 (2020) (plurality) (quoting *Police Dept. of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)). "Content-based regulations" of speech are thus "presumptively unconstitutional and may be justified only if the government proves they are narrowly tailored to serve compelling state interests." *Nat'l Inst. of Fam. & Life Advocs. (NIFLA) v. Becerra*, 585 U.S. 755, 766 (2018).

Laws that "discriminat[e] among viewpoints" are the most "blatant and egregious form of content discrimination." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 168 (2015) (cleaned). Viewpoint-based laws regulate not just "subject matter, but particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). "[V]iewpoint discrimination is uniquely harmful to a free and democratic society." *NRA v. Vullo*, 602 U.S. 175, 187 (2024). "The [Supreme] Court has *never* upheld a law imposing a viewpoint-based restriction on free speech." Richard F. Duncan, *Viewpoint Compulsions*, 61 Washburn L.J. 251, 252 (2022) (emphasis added).

The Algorithmic Pricing Disclosure Act suffers from both infirmities because it imposes content-and viewpoint-based speech regulations. *First*, the Act is content-based. A law "is content

2

based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. Because the Act "compel[s] individuals to speak a particular message"—a state-mandated script about the use of algorithmic pricing—it necessarily "alter[s] the content of their speech." *NIFLA*, 585 U.S. at 766 (cleaned). As the Second Circuit explained just this month: "We treat a law compelling—rather than restricting—speech like any other content-based regulation because mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Volokh v. James*, __ F.4th ____, 2025 WL 2177513, at *6 (2d Cir. Aug. 1, 2025) (quotations omitted). Thus, the Act's compelled disclosure necessarily is content-based.

The Act is also content-based because it singles out marketing communications. Specifically, the Act reaches only messages by marketers that use algorithms to set pricing. *See* N.Y. Gen. Bus. Law § 349-a(2). The Act does not purport to regulate other messages that are tailored via "an algorithm that uses personal data." *Id.* § 349-a(1)(f). For example, the Act does not purport to regulate political messages that solicit donations at an amount set using algorithms and personal data—even through, presumably, these solicitations would trigger the same alleged state interests as pricing. The result is a statute that "disfavors marketing, that is, speech with particular content." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011); *see also Barr*, 591 U.S. at 619.

*Second*, the Act regulates based on viewpoint. Specifically, the Act compels businesses to advance the State's view that algorithmic pricing is relevant, objectionable, and worthy of a warning. The bill's sponsor candidly asserted that all "[a]lgorithmic pricing is deceptive and unfair" because it "benefits retailers at the expense of consumers." Senate Bill S7033, Senate Sponsor Memo (2025), https://tinyurl.com/mu5jdabe ("Senate Sponsor Memo"). As NRF

explains, that viewpoint is wrong: "Retailers use algorithmic pricing to help customers save money." ECF No. 8 (Compl.) ¶ 1. But more fundamentally, the State may not force businesses to ominously declare, "THIS PRICE WAS SET BY AN ALGORITHM USING YOUR PERSONAL DATA," in order to spread the State's preferred message. *See* N.Y. Gen. Bus. Law § 349-a(2); *accord Sorrell*, 564 U.S. at 565 (citing "legislature's expressed statement of purpose" to show that law targeted speakers' "messages for disfavored treatment"); *Volokh*, 2025 WL 2177513, at *14 (requiring disclosure centered on "State's definition of hateful conduct" would "require [private parties] to 'provide a forum for someone else's views'—in this case, the State's"). And that is particularly so where, as here, the State's preferred message aims to "stigmatize" the company's pricing practices and "shape [its] behavior" through speech. *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015).

Because the Act regulates based on viewpoint, it is subject to strict scrutiny even if the Court considers the speech compulsion to be commercial in nature. *See Matal v. Tam*, 582 U.S. 218, 251 (2017) (Kennedy, J., joined by Ginsburg, Sotomayor, and Kagan, JJ., concurring) (explaining that "commercial speech … does not serve as a blanket exemption from the First Amendment's requirement of viewpoint neutrality"); *W.D., Inc. v. Destito*, 879 F.3d 20, 39 (2d Cir. 2018) ("*Matal* instructs that viewpoint discrimination is scrutinized closely whether or not it occurs in the commercial speech context"); *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 139 (3d Cir. 2020) ("We realize, of course, that it may be appropriate to apply strict scrutiny to a restriction on commercial speech that is viewpoint-based."); *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1248 (11th Cir. 2015) ("merely wrapping a law in the cloak of 'commercial

speech' does not immunize it from the highest form of scrutiny due government attempts to discriminate on the basis of viewpoint").[1]

B.   **The *Zauderer* Standard Does Not Apply.**

The State spends much of its motion arguing for a narrow exception to the general rule that content- and viewpoint-based speech restrictions are subject to strict scrutiny. It claims the Act is subject to a "lower level of scrutiny" under the "*Zauderer* standard." *NIFLA*, 585 U.S. at 768; *see also* ECF No. 21, (Def. Mot.) at 6–11. But that standard applies only where a State requires one to "include in his advertising purely factual and uncontroversial information about the terms under which his services will be available … in order to dissipate the possibility of consumer confusion or deception." *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 651 (1985); *see also Volokh*, 2025 WL 2177513, at *9 (explaining "limits to *Zauderer*'s applicability").

The *Zauderer* standard does not apply here for at least four reasons. NRF's brief explains the first three: (1) the Act does not seek to remedy deceptive advertising, (2) the disclosure is not purely factual, and (3) the disclosure compels a controversial message. *See* ECF No. 31 (Pl. Opp.) at 16–19. NRF is correct. *See, e.g.*, *Volokh*, 2025 WL 2177513, at *14–15 (requiring disclosure that centers around State's definition of politically fraught topic is not purely factual and uncontroversial). But that is not all.

In addition, *Zauderer* is inapplicable because the Act's compelled disclosure does not address "the terms under which services will be available." *NIFLA*, 585 U.S. at 768-69 (rejecting application of *Zauderer* on this ground); *Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258, 263–64 (2d Cir. 2014) (similar). To be sure, the *price* is a term under which a business's services will be made

---

[1] NRF "preserve[d] its argument that strict scrutiny should apply here." ECF No. 9-1 (Pl. Mot.) at 11 n.5.

available—as the Second Circuit confirmed where a law required "the disclosure" of "item pricing." *See Poughkeepsie Supermarket Corp. v. Dutchess Cnty., N.Y.*, 648 F. App'x 156, 158 (2d Cir. 2016). But here, the Act does not require businesses to disclose their price. Instead, a business must disclose information about *how* the business *set* its price. That kind of internal business decisionmaking is not a term under which a good or service will be sold. *Cf. Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 74 (2d Cir. 1996) (rejecting argument that First Amendment allows "states" to "require manufacturers to disclose" "information … about their production methods"); *Merck & Co. v. HHS*, 962 F.3d 531, 539 (D.C. Cir. 2020) (holding "disclosure of" a price input— "wholesale acquisition cost"—did not "promote[ ] price transparency in any material way"). Furthermore, as explained below, allowing the Government to mandate disclosure of such internal business operations would enable unprecedented control over the marketplace of ideas. *See infra* Section II.A. Accordingly, "*Zauderer* has no application here." *NIFLA*, 585 U.S. at 769.

## II. THE ACT FAILS ANY FIRST AMENDMENT STANDARD OF REVIEW.

Regardless of which standard of review applies, NRF not only states a claim but is likely to succeed in showing that the Algorithmic Pricing Disclosure Act violates the First Amendment. "Even under *Zauderer*," New York must put forward a "potentially real, not purely hypothetical" justification for its disclosure, and that disclosure "cannot be unjustified or unduly burdensome." *NIFLA*, 585 U.S. at 776. The State cannot satisfy even this standard—much less the higher scrutiny that is warranted in this case.

### A. Satisfying Consumer Curiosity Is Not A Legitimate Government Interest.

Under any standard of First Amendment scrutiny, the State must advance an interest that is "genuine, not hypothesized or invented *post hoc* in response to litigation." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022); *accord NIFLA*, 585 U.S. at 776 (explaining state "has the burden" to justify disclosure and assessing "[t]he only justification that the [state] Legislature put

6

forward"). New York erroneously claims that under *Zauderer*, NRF "bears the burden to disprove every conceivable basis" that would justify the Act. ECF No. 21 (Def. Mot.) at 12 (quotations omitted). But the Supreme Court has held otherwise, explaining that the government must offer a "contemporaneous … rationale" when it "interfer[es] with First Amendment rights." *Kennedy*, 597 U.S. at 543 n.8; *accord NIFLA*, 585 U.S. at 776; *Safelite Grp.*, 764 F.3d at 265 ("we are skeptical that the government's asserted consumer protection interests are genuine and not merely post-hoc rationalizations"). New York's citation to a summary—and therefore non-precedential—order, *see Poughkeepsie*, 648 F. App'x at 156 ("RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT"), cannot overcome the binding authority of the Supreme Court.

New York cannot meet its burden. It is settled law that "consumer curiosity alone is" not "enough" to sustain a compelled disclosure requirement, in the commercial context or any other. *Amestoy*, 92 F.3d at 74. Yet here, that is all the State offers. Specifically, New York says the Act will "increase transparency, promote fairness, and help consumers make informed decisions." Senate Sponsor Memo; *see* ECF No. 21 (Def. Mot.) at 11. But that is just a long-winded euphemism for consumer curiosity. The Ninth Circuit recently recognized as much, explaining that to call a law "only a transparency measure" begs the question: "*transparency into what?*" *X Corp. v. Bonta*, 116 F.4th 888, 902 (9th Cir. 2024) (emphasis altered). And here, the answer is transparency about something (algorithmic pricing) that may, at best, arouse consumer curiosity. But if merely "providing consumers with information" were a sufficient state interest, the State could compel anything it wants—notwithstanding the First Amendment—because "that would be true of any and all disclosure requirements." *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 31 (D.C. Cir. 2014) (Kavanaugh, J., concurring). That is why courts have held that consumers'

mere "wish to know" information "is insufficient to permit the State … to compel" companies "to speak against their will." *Amestoy*, 92 F.3d at 74; *see Am. Meat Inst.*, 760 F.3d at 32 (Kavanaugh, J.) ("I agree with the Second Circuit's statement in *Amestoy* that 'consumer curiosity alone is not a strong enough state interest' to sustain a compelled commercial disclosure.").

To allow New York to justify its law solely on transparency would invite "no end to the information that states could require." *Amestoy*, 92 F.3d at 74. States, in the name of "help[ing] consumers make informed decisions," Senate Sponsor Memo, could require disclosures about all sorts of contentious topics—such as "whether their U.S.-made product was made by U.S. citizens and not by illegal immigrants" or information about "the political affiliation of a business's owners," *Am. Meat Inst.*, 760 F.3d at 32 (Kavanaugh, J.); *see id.* ("These are not far-fetched hypotheticals, particularly at the state or local level.").

Thus, New York's consumer-curiosity interest does not suffice—even under *Zauderer*.

## B. The Disclosure Requirement Is Unjustified And Unduly Burdensome.

New York's motion to dismiss should also be denied because the Act's disclosure requirement is unjustified and unduly burdensome.[2]

First, the Act is unjustified. To "sustain the compulsion of even an accurate, factual statement," New York must "demonstrate[ ] … cognizable harms," *Amestoy*, 92 F.3d at 74, that the Act "remed[ies]," *NIFLA*, 585 U.S. at 776. As explained above, the alleged "harm" here is that consumers will lack information about how prices are set. *See* Senate Sponsor Memo ("Consumers

---

[2] Furthermore, because the State "has the burden to prove that the [Act's disclosure requirement] is neither unjustified nor unduly burdensome," *NIFLA*, 585 U.S. at 776, these requirements effectively function as an affirmative defense, *see Walker v. Schult*, 45 F.4th 598, 616 (2d Cir. 2022). At minimum then, the State's arguments are "inappropriate to resolve on a motion to dismiss." *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 33 (S.D.N.Y. 2025) (Rakoff, J.); *accord* ECF No. 31 (Pl. Opp.) at 7.

should not be charged differently for the same product *without knowing why*." (emphasis added)). Even assuming that such a harm is real and cognizable, *but see supra* Section II.A, the Act fails to "alleviate [it] to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 771 (1993). That is because even with the State's disclosure, a consumer will lack meaningful insight into pricing decisions. Indeed, many factors influence prices, including basic principles of supply and demand, and consumers will never know which factor contributed most to a particular difference in price.

Although New York cannot show the Act *remedies* any consumer harm, there is ample evidence the Act will *cause* consumer harm. Algorithmic pricing benefits consumers. As NRF points out, the quintessential algorithmic-pricing use cases are "loyalty programs," ECF No. 8 (Compl.) ¶ 10, and the retailers represented in this suit use these and other programs to *reduce* prices, ECF No. 9-1 (Pl. Mot.) at 4–5. Research bears this out. In a report to the Organisation for Economic Co-operation and Development ("OECD"), the federal government concluded that "personalized pricing" "tend[s] to improve total welfare"—including "consumer welfare"—by, *inter alia*, "enhancing competition." Personalised Pricing in the Digital Era – Note by the United States, OECD, ¶ 13 (Nov. 2018), https://tinyurl.com/yc3cdmfk; *see id.* ¶ 20 ("personalized pricing, in and of itself, provides no justification for [regulatory] intervention"). And a recent study that analyzed "pricing data for around 50,000 grocery products" found "genuine savings" for the "overwhelming majority" of products when businesses employed "loyalty schemes." U.K. Competition & Markets Authority, Loyalty Pricing in the Groceries Sector, Summary, ¶¶ 4–5 (Nov. 27, 2024), https://tinyurl.com/yv5cspd4. And this is to say nothing of the benefits of algorithmic pricing documented in the Complaint. *See* ECF No. 8 (Compl.) ¶ 15 & nn.1–2.

Next, the Act is also unduly burdensome. Despite the benefits of algorithmic pricing, New York's speech compulsion appears to be designed to deter the practice. *Dep't of Com. v. New York*,

9

588 U.S. 752, 768 (2019) (explaining courts "are not required to exhibit a naiveté from which ordinary citizens are free" (quotations omitted)). Although framed as a transparency measure, the legislative history shows that New York thinks "[a]lgorithmic pricing is" categorically "deceptive and unfair." Senate Sponsor Memo. That mistaken viewpoint appears to have motivated a compelled message designed to *denigrate* goods and services sold using algorithmic pricing.

The burden is apparent from the State's mandatory script. Forcing a business to recite that its "price was set by an algorithm using your personal data," N.Y. Gen. Bus. Law § 349-a(2) (capitalization altered), implies a nefarious scheme involving sensitive, private information. But the State's capacious definitions of "algorithm" (any pricing rule) and "consumer data" (anything about a customer), *id.* § 349-a(1)(A), (D), cover innocuous practices like senior discounts, reduced prices for students, customer-loyalty programs, shopping-cart price cuts, and more. The average person would hardly take offense to these practices and would be unlikely to think that a student discount was "set by an algorithm using your personal data." Courts routinely reject as too-clever-by-half government attempts to justify such burdensome, harmful disclosures through such bespoke definitions. *See, e.g.*, *Nat'l Ass'n of Manufacturers*, 800 F.3d at 529 ("If the law were otherwise … companies could be compelled to state that their products are not 'environmentally sustainable' or 'fair trade' if the government provided 'factual' definitions of those slogans—even if the companies vehemently disagreed that their products were 'unsustainable' or 'unfair.'" (cleaned)); *cf. Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 (7th Cir. 2006) ("Even if one assumes that the State's definition of 'sexually explicit' is precise, it is the State's definition—the video game manufacturer or retailer may have an entirely different definition of this term.").

Not only is the State's message ominous on its face, but it must be delivered in a manner to maximize harm to the business's own message. Specifically, the State requires that its script be

displayed "clear[ly] and conspicuous[ly]" on *any* communication that "directly or indirectly" discusses a "good or service" with an algorithmic price. N.Y. Gen. Bus. Law § 349-a(2). Thus, New York's compelled message must be delivered precisely when a company seeks prospective customers' business.

These burdens are particularly acute for businesses that offer services. "Typically, marketing services versus products require building trusting relationships with customers and customizing them as necessary." Kristen Capunay, *The Differences Between Product Businesses vs. Service Businesses*, CO (July 7, 2025), https://www.uschamber.com/co/grow/sales/differences-in-selling-products-and-services. The intangible value of superior services is often harder to convey, so service-based business frequently prioritize developing strong client relationships, which can lead to repeat business, loyal customers, and valuable referrals. *See id.* For these businesses, the misleading message compelled by the Act is even more burdensome. By causing the customer to wrongly think he paid an unfair price, the compelled disclosure may sour the business relationship. And because customer experience is *the product* for many companies that offer services, this burden goes to the very core of the business. Thus, the Act harms not only "NRF retailers," ECF No. 8 (Compl.) ¶ 26, but also companies that sell services.

Indeed, for many businesses, the State's burdensome message will "effectively rule[ ] out the possibility of having [algorithmic pricing] in the first place." *NIFLA*, 585 U.S. at 778 (quotations omitted).

## CONCLUSION

For the foregoing reasons, the Court should deny the Government's motion to dismiss and grant NRF's motion for a preliminary injunction.

Dated: August 21, 2025  Respectfully submitted,

*/s/Jeremy J. Broggi*
Megan L. Brown*
Jeremy J. Broggi*
Boyd Garriott*
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
jbroggi@wiley.law

*Counsel for Amicus Curiae, Chamber of Commerce of the United States of America*

*\*Pro Hac Vice*

# CERTIFICATE OF COMPLIANCE

This amicus brief is filed as permitted by the Court's August 15, 2025 minute entry. I certify that this brief is 12 pages long and thus complies with the 25-page limit contained in Judge Rakoff's Individual Rule of Practice 2(e).

*/s/Jeremy J. Broggi*
Jeremy J. Broggi