UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL RETAIL FEDERATION,

        *Plaintiff*,

- against -

LETITIA JAMES, in her official capacity as Attorney General of New York,

        *Defendant*.

Case No. 1:25-cv-05500

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

Adam S. Sieff (*pro hac vice*)
Joseph Elie-Meyers (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071-3487
Telephone: (213) 633-6800
adamsieff@dwt.com
josepheliemeyers@dwt.com

David M. Gossett (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005-3317
Telephone: (202) 973-4200
davidgossett@dwt.com

Ambika Kumar (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
ambikakumar@dwt.com

Nimra H. Azmi (NY Bar # 5466693)
Alexandra Perloff-Giles (NY Bar # 5686944)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020-1104
Telephone: (212) 489-8230
nimraazmi@dwt.com
alexandraperloffgiles@dwt.com

*Attorneys for Plaintiff National Retail Federation*

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| INTRODUCTION | | 1 |
| I. | NRF Is Likely To Succeed On Its First Amendment Claim. | 2 |
| | A. The Act is subject to at least intermediate scrutiny, not *Zauderer*. | 2 |
| |     1. The Act regulates speech based on speaker and content. | 2 |
| |     2. The disclosure is neither purely factual nor uncontroversial. | 3 |
| | B. The Act fails both intermediate and *Zauderer* scrutiny. | 6 |
| |     1. The Act fails intermediate scrutiny. | 6 |
| |     2. The Act fails *Zauderer*. | 8 |
| | C. The Court should grant facial relief. | 9 |
| II. | The Remaining Preliminary Injunction Factors Favor Relief. | 10 |
| CERTIFICATION OF COMPLIANCE | | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*,
   916 F.3d 749 (9th Cir. 2019) ................................................................................9

*Am. Meat Inst. v. USDA*,
   760 F.3d 18 (D.C. Cir. 2014) ................................................................................8

*Amarin Pharma, Inc. v. U.S. Food & Drug Admin.*,
   119 F. Supp. 3d 196 (S.D.N.Y. 2015) ..................................................................10

*Cincinnati v. Discovery Network, Inc.*,
   507 U.S. 410 (1993) ..............................................................................................2

*CompassCare v. Hochul*,
   125 F.4th 49 (2d Cir. 2025) ..................................................................................5

*Conn. Bar Ass'n v. United States*,
   620 F.3d 81 (2d Cir. 2010) ....................................................................................8

*Council for Responsible Nutrition v. James*,
   2024 WL 1700036 (S.D.N.Y. Apr. 19, 2024) .......................................................6

*DoorDash, Inc. v. City of New York*,
   --- F. Supp. 3d ---, 2025 WL 1827699 (S.D.N.Y. June 30, 2025) .........................5

*Edenfield v. Fane*,
   507 U.S. 761 (1993) ..............................................................................................6

*Ent. Software Ass'n v. Blagojevich*,
   469 F.3d 641 (7th Cir. 2006) ............................................................................4, 5

*Evergreen Ass'n v. City of New York*,
   740 F.3d 233 (2d Cir. 2014) ..................................................................................5

*FTC v. Vantage Point Servs., LLC*,
   2015 WL 2354473 (W.D.N.Y. May 15, 2015) .....................................................2

*IMS Health Inc. v. Sorrell*,
   630 F.3d 263 (2d Cir. 2010) ...............................................................................6, 7

*Johnson & Johnson Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*,
   960 F.2d 294 (2d Cir. 1992) ..................................................................................3

*Lerman v. N.Y.C. Bd. of Elections*,
  232 F.3d 135 (2d Cir. 2000) ..................................................................................... 10

*Masonry Bldg. Owners of Or. v. Wheeler*,
  394 F. Supp. 3d 1279 (D. Or. 2019) ........................................................................... 9

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
  559 U.S. 229 (2010) .................................................................................................... 5

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) .................................................................................................... 9

*N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*,
  556 F.3d 114 (2d Cir. 2009) .................................................................................... 5, 8

*Nat'l Ass'n of Mfrs. v. S.E.C.*,
  800 F.3d 518 (D.C. Cir. 2015) .................................................................................... 5

*NEMA v. Sorrell*,
  272 F.3d 104 (2d. Cir. 2001) ................................................................................... 5, 8

*NetChoice, LLC v. Bonta*,
  113 F.4th 1101 (9th Cir. 2024) ................................................................................. 10

*NIFLA v. Becerra*,
  585 U.S. 755 (2018) ................................................................................................ 8, 10

*Poughkeepsie Supermkt. Corp. v. Cnty. of Dutchess*,
  140 F. Supp. 3d 309 (S.D.N.Y. 2015), *aff'd* 648 F. App'x 156 (2d Cir. 2016) ...... 5, 8

*Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*,
  632 F.3d 212 (5th Cir. 2011) ...................................................................................... 9

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) .................................................................................................... 2

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ................................................................................................ 2, 6

*U.S. Chamber of Com. v. Lierman*,
  --- F. 4th ---, 2025 WL 2371034 (4th Cir. Aug. 15, 2025) ........................................ 2

*United States v. Stevens*,
  559 U.S. 460 (2010) .................................................................................................... 9

*Volokh v. James*,
  --- F.4th ----, 2025 WL 2177513 (2d Cir. Aug. 1, 2025) ........................................... 8

*Vugo, Inc. v. City of New York*,
    931 F.3d 42 (2d Cir. 2019) ............................................................................... 2, 7, 8

*X Corp. v. Bonta*,
    116 F.4th 888 (9th Cir. 2024) ................................................................................ 10

*Zauderer v. Off. of Disciplinary Counsel of Sup. Ct.*,
    471 U.S. 626 (1985) ........................................................................................ *passim*

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................................ *passim*

**Statutes**

N.Y. Gen. Bus. Law § 349-a(1)(d) ................................................................................. 4

**Other Authorities**

Jonathan H. Adler, *Compelled Commercial Speech and the Consumer "Right to Know,"*
    58 ARIZ. L. REV. 421 (2016) ....................................................................................... 8

Oren Bar-Gill et al., *Algorithmic Harm in Consumer Markets*,
    15 J. LEGAL ANALYSIS 1 (2023) ............................................................................. 6, 7

OECD, *The Effects of Online Disclosure About Personalised Pricing on Consumers*,
    OECD Digital Economy Papers No. 303 (Jan. 2021) ............................................... 7

**INTRODUCTION**

The State has failed to satisfy its burden to show the Act materially and directly advances a substantial interest in a manner that is not more extensive or burdensome than necessary. Instead, the State asks the Court to apply a watered-down version of the wrong First Amendment standard, which would allow it to compel commercial speech so long as that speech were literally true (even if misleading) and so long as it were to have some conceivable relationship (even if unproven) to a substantial interest (even if speculative). The Court should refuse this overture, conclude the Act likely violates the First Amendment, and enter a preliminary injunction.

*First*, the Act is subject to at least the intermediate scrutiny that the State concedes generally applies to commercial speech regulations. The Act compels a subset of retailers to make a conspicuous, ominous disclosure if they use any information somehow linked to a consumer to set a price using an algorithm—even to discount the price, and even to provide offers based on ordinary information like purchase history. The lower *Zauderer* standard does not apply, both because the Act's exclusion for ads involving specified industries renders the Act content-based and because the disclosure is neither purely factual nor uncontroversial. A "literally true" statement is not "purely factual" if it is misleading—as the only evidence here shows to be the case. And the State's claim the disclosure is uncontroversial is belied by the contradictory studies the parties cite.

*Second*, the Act fails either intermediate scrutiny or *Zauderer*—a standard that requires the State to show the Act materially advances a substantial interest without imposing an undue burden. The State claims that algorithmic pricing can sometimes be harmful and that the disclosure will help consumers make informed decisions. ECF No. 30 (Opp.) 2. But the State also admits such pricing can be beneficial—and evidence and common sense show the disclosure will not inform but instead confuse consumers. The Act also fails either standard as it is far more extensive than needed and unjustified: the State has tools to address its cherry-picked anecdotes, and the Act is

1

both irrationally underinclusive and burdensome, forcing retailers to endorse the State's views.

*Finally,* NRF has shown the remaining preliminary injunction factors also favor relief, including because the loss of First Amendment freedoms for any time is irreparable.

**I.       NRF Is Likely To Succeed On Its First Amendment Claim.**

**A.       The Act is subject to at least intermediate scrutiny, not *Zauderer*.**

The State asks the Court to apply *Zauderer*, not the ordinary test it admits generally applies to commercial speech laws. *Zauderer* does not apply here for two independently sufficient reasons.

**1.       The Act regulates speech based on speaker and content.**

*Zauderer* does not apply because the Act exempts speakers from certain industries, thus regulating ads on the basis of their content. The Act regulates ads for mops and brooms but not insurance or mortgages: it is thus definitionally content-based. *See* ECF No. 9-1 (Mot.) 12–13. The State cites *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563–66, 571 (2011), and *Vugo, Inc. v. City of New York*, 931 F.3d 42, 50 (2d Cir. 2019), Opp. 19. But those cases *support* NRF. As *Vugo* held, "the 'upshot' of *Sorrell* is that 'when a court determines commercial speech restrictions are content- or speaker-based,'" "it should then assess their constitutionality under *Central Hudson*." 931 F.3d at 50 (citation omitted; applying intermediate scrutiny); *see also U.S. Chamber of Com. v. Lierman*, --- F. 4th ---, 2025 WL 2371034, at *7 (4th Cir. Aug. 15, 2025) (*at least* intermediate scrutiny applies to "'content-based burden[s]' on commercial speech") (citation omitted).

The State tries to justify this discrimination with a conclusory declaration from one of its attorneys. But the government's "benign motive" does not save from heightened scrutiny a law that "is content based on its face." *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015) (citing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)); *see* Mot. 13. Even if motive mattered, the declarant does not purport to be familiar with the legislature's aims. *See, e.g., FTC v. Vantage Point Servs., LLC*, 2015 WL 2354473, at *3 n.5 (W.D.N.Y. May 15, 2015) (attorney

affidavit lacking personal knowledge was improper "adversarial memorandum" and "insufficient at the preliminary injunction phase"). Nor are his conclusions persuasive: he suggests that insurers and financial institutions "are already heavily regulated" and "subject to separate disclosure requirements," ECF No. 29 (D'Angelo Decl.) ¶ 9, but identifies no laws that require comparable disclosures (because there are none) and does not explain why the Act reaches other "heavily regulated" industries like tobacco, alcohol, pharmaceuticals, and air travel.

The Act's "disparate treatment of two types of commercial speech" requires at least intermediate scrutiny. *Discovery Network*, 507 U.S. at 425 n.20, 429.

### 2. The disclosure is neither purely factual nor uncontroversial.

*Zauderer* also does not apply because the conditions needed to invoke it—that the disclosure be purely factual, uncontroversial, and aimed at deceptive advertising—are not present.

*First*, the required disclosure is not "purely factual" because even if it is literally true, it is misleading. Mot. 18–20 (citing cases). The State provides no evidence that a reasonable consumer, upon seeing a "conspicuous" statement that the price they see "was set by an algorithm using your personal data," would understand that "personal data" does not include sensitive information like race and gender, or that the retailer likely has *reduced* the price based on that information.

The State responds that courts uphold disclosures of "facts with which the speakers disagree." Opp. 11. But the question here is not whether the *accuracy* of a disclosure is *disputed* but whether an (arguably) accurate disclosure is *misleading*. Nor does it matter that NRF cites case outside the Second Circuit. *Id.* The Supreme Court established the "purely factual" requirement, and the Second Circuit has never addressed *Zauderer*'s application to true but misleading disclosures. It has, however, recognized that the "net communicative effect" of a "literally true" statement may be "misleading." *Johnson & Johnson Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297–98 (2d Cir. 1992). Here, the disclosure's "net communicative

effect" is that retailers are exploiting sensitive personal information to increase prices—an effect magnified by the passive voice, suggesting robots, not humans, are in charge. *See, e.g.*, ECF No. 9-2 (Eggert Decl.) ¶ 9 (disclosure "would terrify me" as consumer); ECF No. 9-6 (Roodman Decl.) ¶¶ 10–11 (concern that embarrassed lice product consumers will misinterpret warning); *see also* ECF No. 35 (Chamber of Commerce Br.) at 11; ECF No. 36 (Chamber of Progress Br.) at 11.[1]

As for the State's claim that NRF members may remedy the misimpression with "additional information," the State cites no cases suggesting that this possibility renders a compelled disclosure "purely factual" and thus subject to *Zauderer* review. Opp. 13 (citing portions of cases that do not deal with the "purely factual" prong). In any event, members have no room for the disclosure, much less "additional information." ECF No. 9-4 (Moller Decl.) ¶ 13.

*Second*, the *Zauderer* exception does not apply because the forced disclosure is not "uncontroversial." The State claims NRF provided no evidence of the debate concerning regulation of algorithmic pricing. Opp. 13. But the parties' briefs belie this claim. Opp. 21 (conceding academic debate); Mot. 14. Nor does the State explain how "personal data" is uncontroversial. It is not: sellers and consumers may understand the term to mean information such as age, race, gender, or income, but the State has another definition—"any data that identifies or could reasonably be linked, directly or indirectly, with a specific consumer or device," NYGBL § 349-a(1)(d)—and the Act requires sellers to adopt the State's view. *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 (7th Cir. 2006) (requiring "18" be affixed to video games the state defines as "sexually explicit" requires sellers to deliver "a subjective and highly controversial message").

The State claims the disclosure is "no more 'controversial' than" those upheld in four cases, Opp. 14, but only one of those addressed *Zauderer*'s "controversial" prong. And there, the policy

---

[1] NRF members' failure to "disavow their use of personal data to charge customers different prices for the same goods," Opp. 13, is purposeful: they use data like buying history to offer discounts.

4

motivating the required disclosure—not the disclosure itself—was controversial. *CompassCare v. Hochul*, 125 F.4th 49, 65 (2d Cir. 2025). Where, as here, the disclosure itself is controversial, *Zauderer* does not apply. *Nat'l Ass'n of Mfrs. v. S.E.C.*, 800 F.3d 518, 530 (D.C. Cir. 2015) (statement that product is "conflict free" is "hardly 'factual and non-ideological'"); *Evergreen Ass'n v. City of New York*, 740 F.3d 233, 238, 245 n.6 (2d Cir. 2014) (requirement that pregnancy service center disclose whether it "'provide[s] or provide[s] referrals for abortion,' 'emergency contraception,' or 'prenatal care'"); *Ent. Software Ass'n*, 469 F.3d at 652.

*Finally*, *Zauderer* is expressly confined to disclosures "reasonably related to … preventing deception of consumers." *Zauderer v. Off. of Disciplinary Counsel of Sup. Ct.*, 471 U.S. 626, 651 (1985); *see also Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 251 (2010) (speech must have "tendency to mislead"); *DoorDash, Inc. v. City of New York*, --- F. Supp. 3d ---, 2025 WL 1827699, at *11 (S.D.N.Y. June 30, 2025) (*Zauderer* inapplicable where disclosure served no "corrective purpose"). The State cites three cases to argue that *Zauderer* is not so limited. Opp. 9–10. But each involved the prevention of deception. *See NEMA v. Sorrell*, 272 F.3d 104, 115 (2d. Cir. 2001) (law "inextricably intertwined with the goal of increasing consumer awareness of the presence of mercury in a variety of products," which manufacturers minimized); *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009) (*NYSRA*) (City claimed calorie-disclosure law would "reduce consumer … deception"); *Poughkeepsie Supermkt. Corp. v. Cnty. of Dutchess*, 140 F. Supp. 3d 309, 316 (S.D.N.Y. 2015) ("without a [price] sticker on [grocery] item it is more difficult to monitor the [computer checkout system] to see if it accurately reflects the product's price"), *aff'd* 648 F. App'x 156 (2d Cir. 2016). In contrast, there is nothing deceptive about the prices to which *this* disclosure must be affixed—it is indisputably true that the consumer may purchase the specific product for the specified price.

### B. The Act fails both intermediate and *Zauderer* scrutiny.

In the end, it is irrelevant which level of scrutiny applies because the Act fails either.

#### 1. The Act fails intermediate scrutiny.

Intermediate scrutiny requires the State to prove the Act (1) actually and directly advances a real, non-speculative, and substantial state interest, and (2) regulates no more speech than necessary to achieve that end. *See IMS Health Inc. v. Sorrell*, 630 F.3d 263, 275, 276–77 (2d Cir. 2010), *aff'd*, 564 U.S. 552 (2011). It has not satisfied this burden.

As to the first prong, NRF *does* dispute (*contra* Opp. 20) that the Act materially advances a substantial government interest. The State has a general interest in consumer protection, but *not* in providing consumers misleading information. The State's response? That it need not "produce empirical data." Opp. 20 (citing *Council for Responsible Nutrition v. James*, 2024 WL 1700036, at *6 (S.D.N.Y. Apr. 19, 2024)). But *Council for Responsible Nutrition* emphasizes that "speculation" or "conjecture" are insufficient: the State "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* (upholding restriction supported by physician testimony). That burden requires *evidence*. *See Edenfield v. Fane*, 507 U.S. 761, 770–72 (1993) (test failed without evidence).

Speculation and conjecture are all the State has. It *concedes* that some "academic studies claim[] that algorithmic pricing is economically efficient overall," Opp. 21, and studies it cites admit such pricing may promote "efficiency," "social welfare," and "fair distribution," Oren Bar-Gill et al., *Algorithmic Harm in Consumer Markets*, 15 J. LEGAL ANALYSIS 1, 36 (2023) (cited Opp. 21); *see* Opp. 3–4 (speculating that digital "coupon books" are more "insidious" than those "clipped from a newspaper"). Further, existing tools address the State's handful of real-world examples—such as raising prices for customers near a physical store, Opp. 1, 3, or anticompetitive pricing in housing rentals, *id.* at 6. *See, e.g.*, *State v. Target Corp.*, No. SCV-270231 (Cal. Sup. Ct.

Mar. 4, 2022) (Target to pay $5 million to settle claims that it set higher prices for consumers in or near physical stores); *United States v. Realpage, Inc.*, Case No. 1:24-cv-00710, ECF No. 154 at 2–5 (M.D.N.C. 2024) (settlement with landlord to end algorithmic pricing scheme).

In any event, even if algorithmic pricing "has been shown to increase prices" and raises concerns about "fairness, personal privacy, and disparate impact," Opp. 14, that does *not* mean the disclosure is "reasonably related" to ameliorating those harms. The disclosure applies regardless of whether the price is higher, is discriminatory, or implicates privacy concerns, and is clearly meant to imply that *all* algorithmically-set prices are inherently *un*fair. The State's own authority states that in the "pricing of consumer products, there is no 'one size fits all' transparency protocol." Bar-Gill, 15 J. LEGAL ANALYSIS at 30; *see also, e.g.*, OECD, *The Effects of Online Disclosure About Personalised Pricing on Consumers*, OECD Digital Economy Papers No. 303 (Jan. 2021) (online disclosures have "no statistically significant effect" on consumer behavior).

As to the second prong of intermediate scrutiny, the Act is more extensive than necessary. The Act is overinclusive because it reaches far more than remediation of the State's asserted harms—defining personal data to encompass more than sensitive information and requiring the warning even when algorithms are used to discount prices or raise no privacy concerns. This is not a request to apply the overbreadth doctrine, Opp. 22, but an argument the State has failed to show that "less speech-restrictive approaches would [not] sufficiently promote the asserted government interests." *IMS Health*, 630 F.3d at 280–82. The State already prohibits illegal discrimination, price gouging, privacy violations, and unfair business practices—something it does not dispute.

The State claims its irrational exceptions for banks and insurance companies are permissible under *Vugo*, 931 F.3d at 56. Opp. 22. *Vugo*, however, acknowledged that laws fail intermediate scrutiny if they are pierced with exceptions that have "no relationship" to and

7

"directly undermine" the government's asserted interests by permitting sources of harm. 931 F.3d at 54–55 (relying on cases cited at Mot. 15). *Vugo* merely held that exempting *a single advertiser* did "not render [a] ban ineffective." *Id.* at 53. Regulating allegedly exploitative ads for groceries and electronics, while allowing them for credit cards and mortgages, does not compare.

### 2. The Act fails *Zauderer*.

*Zauderer* is "far more stringent" than ordinary rational basis review, *Am. Meat Inst. v. USDA*, 760 F.3d 18, 33 (D.C. Cir. 2014) (Kavanaugh, J., concurring) (*cf.* Opp. 14), and "better characterized as a special and more relaxed application of intermediate scrutiny," *Volokh v. James*, --- F.4th ----, 2025 WL 2177513, at *7 n.6 (2d Cir. Aug. 1, 2025). *See also* Jonathan H. Adler, *Compelled Commercial Speech and the Consumer "Right to Know,"* 58 ARIZ. L. REV. 421, 436 (2016) (*Zauderer* "is but an application of the underlying *Central Hudson* framework").[2] Thus, "[e]ven under *Zauderer*, a disclosure requirement cannot be 'unjustified or unduly burdensome.'" *NIFLA*, 585 U.S. at 776 (quoting *Zauderer*, 471 U.S. at 651). The first part of that test—justification—is identical to what intermediate scrutiny requires. *Id.* at 776–77 (disclosure must "remedy a harm that is … 'not purely hypothetical'") (citation omitted); *see also id.* at 799 (Breyer, J., dissenting) (acknowledging this "searching standard" mirrors intermediate scrutiny). The test departs from intermediate scrutiny *only* in relaxing the "narrow tailoring" requirement to an "unduly burdensome" standard—but a compelled disclosure is unduly burdensome if it extends "broader than reasonably necessary," "drowns out" a speaker's own message, or targets a "curiously narrow subset of speakers." *Id.* at 776–78. The State fails to satisfy each prong.

First, the State fails to show the Act is justified. It cites a handful of articles and anecdotal

---

[2] The State cites cases that describe *Zauderer* as rational basis review. *E.g.*, *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 92 (2d Cir. 2010); *NYSRA*, 556 F.3d at 132; *NEMA*, 272 F.3d at 115; *Poughkeepsie Supermkt.*, 648 F. App'x at 158. These cases pre-date *NIFLA v. Becerra*, 585 U.S. 755, 776–78 (2018), which clarified what the *Zauderer* standard requires.

8

examples suggesting some forms of algorithmic pricing are harmful, Opp. 3–6, 15, but doesn't identify harms arising from a lack of disclosure or explain how the Act would actually remedy the purported harms, *see* Opp. 4 (citing examples). *See also supra* § I.B.1; Mot. 21–22.

Second, the State fails to show that the Act is not unduly burdensome. *See* Mot. 22–23. Courts *routinely* (*contra* Opp. 15) consider the availability of less speech restrictive means. *See, e.g.*, *Masonry Bldg. Owners of Or. v. Wheeler*, 394 F. Supp. 3d 1279, 1300–05 (D. Or. 2019) (notification "unduly burdensome" where government "provide[d] no empirical support" that it could not have achieved its goals through other means). Nor is there anything "conclusory or unsubstantiated," Opp. 16, about the notion that a requirement to include certain text will displace other text. *See, e.g.*, *Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 229 (5th Cir. 2011) (disclosure unduly burdensome where it would "effectively rule out the ability … to employ short advertisements"); *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) (city failed to "show[]" disclosure "does not drown out Plaintiffs' messages").[3] And the State has no good answer for exempting an arbitrary subset of ads based on their content.

### C. The Court should grant facial relief.

The State acknowledges (Opp. 23) a speech regulation is facially invalid if "a substantial number of [its] applications are unconstitutional," *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (internal quotation marks and citation omitted), but misunderstands how that test applies.

Facial relief is appropriate because (1) NRF has shown that every application of the Act regulates speech in the same way by compelling all covered businesses to publish the same warning, and (2) the State has *not* shown that *any* applications of the Act—much less a

---

[3] The Court should not accept the State's self-serving interpretation of the Act's "length and size" requirements. D'Angelo Decl. ¶ 7. *See United States v. Stevens*, 559 U.S. 460, 480 (2010) (speech regulation does not survive "merely because the Government promise[s] to use it responsibly").

substantially appreciable number—are justified. *See, e.g.*, *Lerman v. N.Y.C. Bd. of Elections*, 232 F.3d 135, 153 (2d Cir. 2000) (restriction "invalid on its face" when government failed to show it had any "plainly legitimate sweep[,]" much less a substantial number of valid applications).

The State claims NRF's request for facial relief rests on the premise "that the retailers and companies that have been exposed for utilizing personal data to exploit their customers did nothing wrong." Opp. 24. But this is a case about laws *compelling protected* speech, not those *restricting illegal* speech. Compelled speech laws "raise the same First Amendment issues for every" regulated entity. *X Corp. v. Bonta*, 116 F.4th 888, 899 (9th Cir. 2024); *see also, e.g., NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1116 (9th Cir. 2024) (law compelling speech facially invalid: "in every application to a covered business, [it] raises the same First Amendment issues"). Showing that a law compelling speech lacks justification in one instance is thus enough to show that it lacks justification in *any* instance. *See NIFLA*, 585 U.S. at 779 (facial relief warranted by conclusion that law compelled speech without justification). That *some* actors compelled to speak may violate *other* consumer protection laws is not part of the analysis. Nor does granting facial relief require the Court to *ratify*—as NRF most certainly does not ratify—that kind of lawbreaking.

## II.     The Remaining Preliminary Injunction Factors Favor Relief.

NRF's motion showed that where, as here, a plaintiff shows it is likely to prevail on a First Amendment challenge, a preliminary injunction is proper. NRF has shown irreparable harm for two reasons—because the loss of First Amendment rights itself qualifies, Mot. 25, and because compliance costs are irreparable where, as here, sovereign immunity would bar their recovery, Mot. 26. The State does not dispute the former and fails to address the latter. As to the remaining factors, "securing First Amendment rights is in the public interest," and the "'Government does not have an interest' in the unconstitutional enforcement of a law." *Amarin Pharma, Inc. v. U.S. Food & Drug Admin.*, 119 F. Supp. 3d 196, 237 (S.D.N.Y. 2015) (citation omitted); *see* Mot. 27.

Respectfully submitted,

| | |
|---|---|
| Adam S. Sieff (*pro hac vice*)<br>Joseph Elie-Meyers (*pro hac vice*)<br>DAVIS WRIGHT TREMAINE LLP<br>350 South Grand Avenue, 27th Floor<br>Los Angeles, CA 90071-3487<br>Tel: (213) 633-6800<br>adamsieff@dwt.com<br>josepheliemeyers@dwt.com<br><br>David M. Gossett (*pro hac vice*)<br>DAVIS WRIGHT TREMAINE LLP<br>1301 K Street NW, Suite 500 East<br>Washington, D.C. 20005<br>Tel: (202) 973-4200<br>davidgossett@dwt.com | */s/ Ambika Kumar*<br>Ambika Kumar (*pro hac vice*)<br>DAVIS WRIGHT TREMAINE LLP<br>920 Fifth Avenue, Suite 3300<br>Seattle, WA 98104-1610<br>Tel: (206) 622-3150<br>ambikakumar@dwt.com<br><br>Nimra H. Azmi (NY Bar # 5466693)<br>Alexandra Perloff-Giles (NY Bar # 5686944)<br>DAVIS WRIGHT TREMAINE LLP<br>1251 Avenue of the Americas, 21st Floor<br>New York, NY 10020-1104<br>Tel: (212) 489-8230<br>nimraazmi@dwt.com<br>alexandraperloffgiles@dwt.com |

*Attorneys for Plaintiff National Retail Federation*

August 28, 2025

# CERTIFICATION OF COMPLIANCE

I certify that this Memorandum of Law is 10 pages long, and thus complies with the 10-page limit contained in Judge Rakoff's Individual Rule of Practice 2(e).

*/s/ Ambika Kumar*
Ambika Kumar
