UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NATIONAL RETAIL FEDERATION,

                Plaintiff,

      – against –                        Civil No. 25 Civ. 5500 (JSR)

LETITIA JAMES, in her official capacity as
Attorney General of New York,

                Defendant.
-------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-8673


YUVAL RUBINSTEIN
Special Litigation Counsel
   *of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .....................................................................................................................2

I.  PLAINTIFF'S OPPOSITION FURTHER DEMONSTRATES THAT ITS FIRST
    AMENDMENT CLAIM IS DEFICIENT AS A MATTER OF LAW................................2

    A.  The Act Satisfies *Zauderer* ....................................................................2

    B.  Plaintiff Fails to Plausibly Allege the Act is Subject to Heightened Scrutiny............9

II. PLAINTIFF'S OPPOSITION FURTHER DEMONSTRATES THAT THE ACT
    DOES NOT VIOLATE THE FIRST AMENDMENT ON ITS FACE..............................10

III. THE ARGUMENTS OF AMICI COP AND COC ARE MERITLESS...........................11

    A.  COP's Argument Based Upon the Legislative History is Factually and
        Legally Meritless ....................................................................................11

    B.  COC's Argument That Strict Scrutiny Applies is Inconsistent With Plaintiff's
        Legal Position and is Also Baseless..........................................................13

CONCLUSION.................................................................................................................15

i

# TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*,
    307 F.3d 24 (2d Cir. 2002) ................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................8, 10

*Barnes v. Glen Theatre, Inc.*,
    501 U.S. 560 (1991) ....................................................................................12

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
    591 U.S. 610 (2020) ....................................................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 3-4

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980) ................................................5, 6, 8, 9, 10, 12, 15

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ....................................................................................10

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018) ......................................................................10

*City of Renton v. Playtime Theatres, Inc.*,
    475 U.S. 41 (1986) ................................................................................12, 15

*Cmty. Hous. Improvement Program v. City of New York*,
    59 F.4th 540 (2d Cir. 2023) .......................................................................10

*CompassCare v. Hochul*,
    125 F.4th 49 (2d Cir. 2025) ...........................................................3, 4, 5, 7, 13

*Connecticut Bar Ass'n v. U.S.*,
    620 F.3d 81 (2d Cir. 2010) .........................................................2, 4, 8, 15

*Cornelio v. Connecticut*,
    32 F.4th 160 (2d Cir. 2022) .........................................................................9

*Curry Management Corp. v. JPMorgan Chase Bank, N.A.*,
    643 F. Supp. 3d 421 (S.D.N.Y. 2022) ....................................................2, 9

*Edenfield v. Fane*,
    507 U.S. 761 (1993) ....................................................................................12

*Evergreen Ass'n, Inc. v. City of New York*,
    740 F.3d 233 (2d Cir. 2014)....................................................12

*Florida Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995)............................................................12

*Free Speech Coalition, Inc. v. Paxton*,
    145 S.Ct. 2291 (June 27, 2025)..............................................13

*Hayes v. N.Y. Att'y Grievance Comm.*,
    672 F.3d 158 (2d Cir. 2012)...............................................6, 7

*Hudson Shore Assoc. Limited Partnership v. New York*,
    139 F.4th 99 (2d Cir. 2025) ...................................................10

*Ibanez v. Fla. Dep't of Bus. & Prof. Regul., Bd. of Accountancy*,
    512 U.S. 136 (1994).............................................................6

*Int'l Dairy Foods Ass'n v. Amestoy*,
    92 F.3d 67 (2d Cir. 1996)......................................................6

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022).............................................................8

*Matal v. Tam*,
    582 U.S. 218 (2017)............................................................15

*Milavetz, Gallop & Milavetz, P.A. v. U.S.*,
    559 U.S. 229 (2010)....................................................2, 3, 4, 8

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024)............................................................10

*Nat'l Ass'n of Mfrs. v. SEC*,
    800 F.3d 518 (D.C. Cir. 2015) ...............................................12

*Nat'l Ass'n of Wheat Growers v. Bonta*,
    85 F.4th 1263 (9th Cir. 2023) .................................................5

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*,
    272 F.3d 104 (2d Cir. 2001)..............................................2, 3, 9

*Nat'l Inst. of Family & Life Advocs. v. Becerra*,
    585 U.S. 755 (2018)...................................................... *passim*

*Norwalk CORE v. Norwalk Redev. Agency*,
    395 F.2d 920 (2d Cir. 1968) ..................................................10

*N.Y. State Restaurant Ass'n v. N.Y. City Bd. of Health*,
    556 F.3d 114 (2d Cir. 2009)............................................................2, 3, 8

*Pop Top Corp. v. Nook Digital, LLC*,
    No. 20 Civ. 6598, 2022 WL 193064 (S.D.N.Y. Jan. 21, 2022)................................4

*Poughkeepsie Supermarket Corp. v. Cnty. of Dutchess, N.Y.*,
    140 F. Supp. 3d 309 (S.D.N.Y. 2015)...................................................7

*Poughkeepsie Supermarket Corp. v. Dutchess Cnty., N.Y.*,
    648 F. App'x 156 (2d Cir. 2016) .....................................................7, 8

*Reed v. Gilbert*,
    576 U.S. 155 (2015)...................................................................13

*RJ Reynolds Tobacco Co. v. FDA*,
    96 F.4th 863 (5th Cir. 2024) ......................................................2, 3, 5, 9

*Safelite Group, Inc. v. Jepsen*,
    764 F.3d 258 (2d Cir. 2014).......................................................2, 3, 6, 8

*SEC v. City of Rochester, N.Y.*,
    731 F. Supp. 3d 455 (W.D.N.Y. 2024) ...............................................4, 15

*Shady Records, Inc. v. Source Enterprises, Inc.*,
    371 F. Supp. 2d 394 (S.D.N.Y. 2005)..................................................7

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)...............................................................9, 14

*Tyler v. City of Kingston*,
    74 F.4th 57 (2d Cir. 2023) ...........................................................4

*Univ. at Buffalo Young Am. for Freedom v. Univ. at Buffalo Student Ass'n Inc.*,
    No. 23 Civ. 480, 2024 WL 5119779 (W.D.N.Y. Dec. 15, 2024) .........................10

*Vidal v. Elster*,
    602 U.S. 286 (2024)..................................................................14

*Volokh v. James*,
    No. 23-356, 2025 WL 2177513 (2d Cir. Aug. 1, 2025) .........................3, 5, 13, 14

*Vugo Inc. v. City of New York*,
    931 F.3d 42 (2d Cir. 2019), *cert. denied*, 140 S.Ct. 2717 (2020)....................10, 14

*Wandering Dago, Inc. v. Destito*,
    879 F.3d 20 (2d Cir. 2018)............................................................15

*Wiedis v. Dreambuilder Investments, LLC,*
  268 F. Supp. 3d 457 (S.D.N.Y. 2017) ...................................................................................7

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,*
  471 U.S. 626 (1985) .............................................................................................. *passim*

**STATUTES**

N.Y. Gen. Bus. Law § 349
  § 349-a(1)(d) ......................................................................................................8, 9
  § 349-a(2) ..................................................................................................... *passim*
  § 349-a(3) ............................................................................................................8, 9

**RULES**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................7, 10

Defendant Letitia James ("Defendant"), in her official capacity as New York State Attorney General, respectfully submits this reply memorandum of law in further support of her motion to dismiss the Complaint (ECF No. 8) and in response to amicus briefs filed by the U.S. Chamber of Commerce ("COC") (ECF No. 35) and Chamber of Progress ("COP") (ECF No. 37) in support of Plaintiff National Retail Federation ("Plaintiff").

## PRELIMINARY STATEMENT

Defendant's opening memorandum demonstrated that Plaintiff's First Amendment challenge to the statute known as the Algorithmic Pricing Disclosure Act ("Act") fails to state a plausible claim. Although couched as a First Amendment claim, Plaintiff's real objection to the Act's disclosure requirement is that it will—to quote Plaintiff's revealing admission—"contradict[] corporate messaging." Complaint ("Compl.") at ¶ 35. Plaintiff's opposition only serves to highlight that its First Amendment claim is ripe for dismissal under clearly applicable Supreme Court and Second Circuit precedent.

Indeed, Plaintiff spends much of its opposition tiptoeing around a quarter-century of Second Circuit case law bolstering Defendant's argument that the Act is constitutional under *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985). Plaintiff also asserts that *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 (2018) ("*NIFLA*"), reshaped the *Zauderer* standard in commercial advertising cases, even though the Second Circuit's cases from this year alone refute this contention. Nor do the amicus briefs filed by COC and COP—which misstate the legislative history and fail to establish that heightened scrutiny is warranted—assist Plaintiff in stating a plausible claim. Accordingly, the Court should grant Defendant's motion and dismiss the Complaint with prejudice.

<u>**ARGUMENT**</u>

**I.  PLAINTIFF'S OPPOSITION FURTHER DEMONSTRATES THAT ITS FIRST AMENDMENT CLAIM IS DEFICIENT AS A MATTER OF LAW**

**A.  The Act Satisfies *Zauderer***

The Second Circuit has firmly held in several cases that *Zauderer*'s domain extends beyond the prevention of consumer deception. ECF No. 21, Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint ("Memo.") at 8 (citing cases). Yet Plaintiff still insists that *Zauderer* is inapplicable because the Act does not seek to correct "misleading or deceptive commercial speech." ECF No. 31, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint ("Opp.") at 16-17. Although Plaintiff concedes that *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 113 (2d Cir. 2001) ("*NEMA*"), and *N.Y. State Restaurant Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009) ("*NYSRA*"), applied *Zauderer* beyond the consumer deception context, Plaintiff attempts to brush past these longstanding precedents by claiming they "predate" *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229 (2010), and *NIFLA*.[1] Opp. at 16. But neither case supports Plaintiff's assertion.

*Milavetz* nowhere held that *Zauderer* review is inapplicable outside the realm of consumer deception. Plaintiff's citation to *Connecticut Bar Ass'n v. U.S.*, 620 F.3d 81 (2d Cir. 2010), and *Safelite Group, Inc. v. Jepsen*, 764 F.3d 258 (2d Cir. 2014), is also misplaced. Opp. at 16. *Connecticut Bar Ass'n* did not construe *Milavetz* as abrogating *NEMA* and *NYSRA*, while *Safelite*

---

[1] Notably, Defendant also cited *RJ Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 883 (5th Cir. 2024), *cert. denied*, 145 S.Ct. 592 (2024), which compiled post-*Milavetz* decisions from several circuits to hold that the *Zauderer* "standard is not that *only* anti-deception interests suffice, but that *any* legitimate state interest suffices[.]" (emphasis in original). Memo. at 10, n.5. Plaintiff fails to even address *RJ Reynolds* or the post-*Milavetz* decisions cited. *See Curry Management Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").

reaffirmed the holdings of both cases after *Milavetz*. 764 F.3d at 263. *Safelite* distinguished *NEMA* and *NYSRA*, and applied intermediate scrutiny, only because the challenged statute did not involve a disclosure "about a company's own products or services." *Id.* at 264; *Volokh v. James*, __F.4th__, No. 23-356, 2025 WL 2177513, at *9 (2d Cir. Aug. 1, 2025) (*Zauderer* applies to statutes "designed to address misleading commercial speech" or "presumably, its equivalent, the non-disclosure of information material to the consumer") (cleaned up).

Moreover, *NIFLA* undermines Plaintiff's argument, as California's requirement that crisis pregnancy centers notify patients about the availability of abortion services had nothing to do with deception of any kind. *RJ Reynolds*, 96 F.4th at 883 (construing *NIFLA* as establishing that *Zauderer* extends beyond consumer deception). The same holds true for the employee handbook notice concerning reproductive health decision-making challenged in *CompassCare v. Hochul*, 125 F.4th 49 (2d Cir. 2025). The quotation from *Zauderer* in *CompassCare* in no way supports Plaintiff's strained argument, (Opp. at 16) as the notice was intended to "inform[] employees of their available rights and remedies," 125 F.4th at 66, not to prevent consumer deception.

Plaintiff's opposition also fails to demonstrate that the disclosure in § 349-a(2)[2] is anything but factual. Indeed, Plaintiff concedes the disclosure is "literally true." Opp. at 17. Plaintiff instead maintains that the "overall message" is "misleading in context" by falsely implying the price is "exploitative" and based on "sensitive personal data." Opp. at 17. But the speculative allegations in the Complaint fail to plausibly show that consumers will be misled by the disclosure. Memo. at 9. Plaintiff merely claims the Court is "required to accept" these threadbare allegations and cites inapposite cases. Opp. at 17-18. In short, Plaintiff's "mere[ ]…suspicion" that § 349-a(2) is "likely

---

[2] Defendant acknowledges that references to § 349-a(2) were inadvertently mistitled in the opening memorandum, and apologizes to the Court for this typographical error.

to evoke consumer concerns" (Compl. at ¶ 35) is simply not "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

Moreover, Plaintiff's bare allegation that the § 349-a(2) disclosure is misleading fails to state a plausible claim given that Plaintiff's members can always "convey[]…additional information" regarding their use of algorithmic pricing. *Milavetz*, 559 U.S. at 250; Memo. at 10. Plaintiff fails to address this aspect of *Milavetz* and attempts to distinguish *Connecticut Bar Ass'n* by claiming that, unlike the "printed disclosure" in that case, Plaintiff's members are unable to convey additional information in the "cramped pixel space available." Opp. at 18. This allegation is not only implausible, but "strains credulity" altogether. *Pop Top Corp. v. Nook Digital, LLC*, No. 20 Civ. 6598, 2022 WL 193064, at *3 n.6 (S.D.N.Y. Jan. 21, 2022). Plaintiff's attempt to distinguish *SEC v. City of Rochester, N.Y.*, 731 F. Supp. 3d 455 (W.D.N.Y. 2024), because it was decided after "factual development," is also unavailing. Opp. at 18; *Tyler v. City of Kingston,* 74 F.4th 57, 64 (2d Cir. 2023) (citing summary judgment decisions to affirm dismissal of complaint, and rejecting assertion that city's interest "cannot be resolved on a Rule 12 motion").

Plaintiff's opposition fares no better in contending that the § 349-a(2) disclosure is controversial. Opp. at 18-19. A disclosure regarding companies' use of personal data to set prices for goods and services is hardly more controversial than the reproductive health decision-making disclosure upheld in *CompassCare*. Memo. at 7. Plaintiff downplays the disclosure in *CompassCare* as one involving "copies of enacted legal codes" that "speak for themselves." Opp. at 19. But that was decidedly *not* the argument made by CompassCare and its co-plaintiff, NIFLA. 125 F.4th at 66 (arguing mere inclusion of notice could be viewed as conveying message "that [plaintiffs] see nothing wrong with the policy judgment underlying the" statute) (cleaned up). And given *CompassCare*'s holding that the handbook notice was "not akin" to the crisis pregnancy

center notice in *NIFLA*, 125 F.4th at 66, Plaintiff's reliance upon *NIFLA* is also misplaced.

Plaintiff's failure to plausibly allege that the disclosure in § 349-a(2) is not factual or is controversial is reason enough to warrant dismissal of the Complaint. But Plaintiff is also unable to sufficiently allege that the disclosure is not reasonably related to the State's legitimate interest in informing consumers about products that are priced using algorithms and their personal data. Memo. at 11-13. Plaintiff instead claims Defendant "mischaracterizes" *Zauderer* as a rational basis standard. Opp. at 8. Although Plaintiff concedes the Second Circuit has referenced rational basis review in several First Amendment cases involving commercial disclosures, Plaintiff asserts *NIFLA* "clarifie[d] that *Zauderer* is not rational basis review." *Id.* at 9, n. 3.[3] Plaintiff even claims the *Zauderer* analysis operates "[m]uch like intermediate scrutiny" after *NIFLA*, with the State bearing the burden of proof. *Id.* at 8.

Although *NIFLA* was decided more than seven years ago, Plaintiff fails to cite *any* post-*NIFLA* decision involving a commercial advertising disclosure in support of its contention. Indeed, the Second Circuit recently reaffirmed that "mandatory disclosures in advertising" are subject "to a level of scrutiny resembling rational basis review" under *Zauderer. CompassCare*, 125 F.4th at 64. *Volokh* likewise "recognize[d] that the scrutiny [under *Zauderer*] is more relaxed than ordinary intermediate or strict scrutiny." 2025 WL 2177513, at *7 n.6; *RJ Reynolds*, 96 F. 4th at 885 & n.72 (rejecting plaintiff's assertion that *Zauderer* is "merely an application of" *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)). Even the case law Plaintiff does cite undermines its interpretation of *NIFLA. See Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1266 (9th Cir. 2023) (challenges to "compelled *commercial* speech" that are "purely factual

---

[3] Plaintiff also faults Defendant for not citing *NIFLA* in the opening memorandum. Opp. at 8. But Defendant had no such need, as the extensive discussion of *Zauderer* in the Complaint does not even cite *NIFLA*. Compl. at ¶¶ 34-36.

and uncontroversial" are subject to "a lesser form of scrutiny akin to a rational basis test") (emphasis added).

Plaintiff fails to plausibly allege the disclosure in § 349-a(2) is unjustified and unduly burdensome in any case. Plaintiff cites *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 74 (2d Cir. 1996) ("*IDFA*"), to assert that a disclosure satisfying mere "consumer curiosity" is unjustified. Opp. at 9. COC likewise relies heavily upon *IDFA* to argue the Act is unjustified. COC Br. at 7-8.[4] Yet Judge Leval noted in his piercing dissent that he was "comforted" that "the precedential effect of the majority's ruling is quite limited." *Id.* at 81 (Leval, J., dissenting). And *IDFA*'s reach has proven to be "quite limited" indeed. Defendant cited several Second Circuit cases distinguishing *IDFA*, and § 349-a(2) similarly addresses more than consumer curiosity. Memo. at 15; *ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 33 (2d Cir. 2002) (Sotomayor, J.) (distinguishing earlier Second Circuit case where "no decision of recent vintage mentions the case without confining it to its precise facts").

Plaintiff does not dispute that *IDFA* has been construed narrowly to its facts in subsequent Second Circuit decisions. Plaintiff instead claims those decisions are inapplicable because they were decided on the basis of an evidentiary record. Opp. at 11-12. But as noted above, the holdings of these decisions are indeed applicable to a motion to dismiss. *Supra* at 4.[5]

---

[4] COC also advances the curious argument that *Zauderer* is inapplicable because the Act does not address the "terms" under which the service will be available, as businesses are not required to disclose the price. COC Br. at 5-6 (citing *NIFLA*, 585 U.S. at 768-69). COC omits *NIFLA*'s main point that the disclosure "requires these clinics to disclose information about *state*-sponsored services[.]" *Id.* at 769 (emphasis in original). Nor is *Safelite* applicable, as the Act clearly does *not* obligate covered entities to disclose the services of their competitors. *Supra* at 3.

[5] Plaintiff also cites *Hayes v. N.Y. Att'y Grievance Comm.*, 672 F.3d 158 (2d Cir. 2012). Opp. at 10. But *Hayes* applied the *Central Hudson* analysis to the challenged attorney disclosure statement and had no occasion to apply *Zauderer*. *Ibanez v. Fla. Dep't of Bus. & Prof. Regul., Bd. of Accountancy*, 512 U.S. 136 (1994), which *Hayes* relied upon, likewise applied *Central Hudson*. Neither decision, involving the regulation of licensed professionals, is "analogous to this case."

Moreover, *Poughkeepsie Supermarket Corp. v. Dutchess Cnty., N.Y.*, 648 F. App'x 156, 157-58 (2d Cir. 2016) affirmed the Rule 12(b)(6) dismissal of a First Amendment challenge to a local law requiring price stickers to be placed on items for sale at retail. In particular, the local law was "supported by an interest greater than the gratification of consumer curiosity," and the plaintiff "failed to allege sufficient facts to demonstrate that the law was not reasonably related to the state's valid interest in providing complete price information to consumers." *Id.* at 158. Plaintiff's challenge to the Act is subject to dismissal on the same basis.

Plaintiff attempts to distinguish *Poughkeepsie Supermarket Corp.* based upon the plaintiff's purported concessions, (Opp. at 11) but is silent on the Second Circuit's ultimate holding. COC chooses to emphasize that *Poughkeepsie Supermarket Corp.* was a summary order. COC Br. at 7. But "[s]ummary orders can be instructive to district courts in resolving particular disputes," and "in the absence of binding authority contradicting [*Poughkeepsie Supermarket Corp.*], there is no clear reason to reject [its] clear language." *Wiedis v. Dreambuilder Investments, LLC*, 268 F. Supp. 3d 457, 466 (S.D.N.Y. 2017) (cleaned up); *Shady Records, Inc. v. Source Enterprises, Inc.*, 371 F. Supp. 2d 394, 398 & n.1 (S.D.N.Y.2005). Although Plaintiff and COC claim *Poughkeepsie Supermarket Corp.* has been superseded by subsequent decisions, it is in harmony with the Second Circuit's reaffirmation in *CompassCare* that it continues to "apply the standard of rational basis review set out in *Zauderer*[.]" 125 F.4th at 67.

In addition, Plaintiff alleges the disclosure in § 349-a(2) is not supported by "evidence of real, cognizable harms," and that the concerns motivating the passage of the Act are hypothetical. Opp. at 10-11. But the government need not proffer "'evidence or empirical data' to demonstrate

---

*Poughkeepsie Supermarket Corp. v. Cnty. of Dutchess, N.Y.*, 140 F. Supp. 3d 309, 315 n. 2 (S.D.N.Y. 2015), *aff'd*, 648 F. App'x 156 (2d Cir. 2016) (distinguishing *Hayes*).

the rationality of mandated disclosures in the commercial context." *Connecticut Bar Ass'n*, 620 F.3d at 97-98 (quoting *NYSRA*, 556 F.3d at 134 n.23).[6] It is Plaintiff that bears this burden, and the skeletal allegations in the Complaint fail to do so. *Poughkeepsie Supermarket Corp.*, 648 F. App'x at 158. Plaintiff's claim that *NIFLA* shifts the burden onto the State is erroneous. *Supra* at 5-6.

Finally, Plaintiff's opposition fails to demonstrate that the eleven-word disclosure in § 349-a(2) is unduly burdensome to its members. Opp. at 12-13. First, Plaintiff claims the disclosure is "broader than necessary," and that conveying additional information would not "dispel" any misrepresentation. *Id.* at 12. This protestation is contrary to *Milavetz* and Second Circuit precedent. *Supra* at 4. Plaintiff also contends Defendant's argument is a "factual assertion" that contradicts the Complaint's allegations regarding the displacement of "valuable pixel space," which must be accepted as true. Opp. at 12-13. But the Complaint's strained attempt to compare the online "real estate" of Plaintiff's members with traditional print advertising is wholly "devoid of…factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up) and is simply not plausible. *Supra* at 4.

Nor do the exemptions in §§ 349-a(1)(d) and (3) render the Act unduly burdensome. Opp. at 13-14. Plaintiff does not even allege these narrow exemptions pose an undue burden *to its members*. Moreover, *Zauderer* could not have been clearer that a disclosure requirement is not

---

[6] The Act was passed as part of the State's annual budget bill, although stand-alone statutes were proposed in the Legislature that were not enacted. Memo. at 2-4. COC cites the unenacted Senate bill, S7033, to argue the Act does not satisfy *Zauderer*. COC Br. at 6-7. But COC's citation to a footnote in *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022), which applied heightened scrutiny in a hybrid Free Speech and Free Exercise case brought by a high school football coach, is clearly inapposite. Moreover, COC's reliance upon *NIFLA* is misplaced for the reasons discussed above. *Supra* at 5. COC's citation to *Safelite* is misleading, as the Second Circuit was applying the *Central Hudson* analysis to the challenged statute, not *Zauderer* review.

subject to challenge merely because "it is 'under-inclusive'—that is, if it does not get at all facets of the problem it is designed to ameliorate." 471 U.S. at 651 n.14. Plaintiff's self-serving assertion that the Act is "grossly underinclusive" hardly suffices to distinguish *Zauderer*.[7] In addition, Plaintiff's quotation of *NIFLA* is wholly misleading. Opp. at 13-14. The reference to a "subset of speakers" was made in the context of the licensed notice that was *not* subject to *Zauderer* review, and was instead subject to heightened scrutiny. 585 U.S. at 777. In sum, the Complaint should be dismissed for failure to state a plausible First Amendment claim under *Zauderer*.

### B. Plaintiff Fails to Plausibly Allege the Act is Subject to Heightened Scrutiny

The Second Circuit made clear in *NEMA* that the *Central Hudson* intermediate scrutiny analysis should only "be applied to statutes that *restrict* commercial speech." *NEMA*, 272 F.3d at 115 (emphasis in original). Memo. at 14. Plaintiff's opposition does not even address Defendant's argument. *Curry Management Corp.*, 643 F. Supp. 3d at 426. Plaintiff's concession that the Act does not directly restrict commercial speech precludes the applicability of intermediate scrutiny, and Plaintiff's reliance upon *Cornelio v. Connecticut,* 32 F.4th 160 (2d Cir. 2022), which involved a sex offender registry notice, is misplaced.

Plaintiff further argues that intermediate scrutiny is justified under *Sorrell v. IMS Health Inc*., 564 U.S. 552 (2011) because the Act purportedly "singles out" a class of speakers on the basis of their speech, and is content-based as a result of the limited exemptions in §§ 349-a(1)(d) and (3). Opp. at 14-15. But Plaintiff fails to cite even a single decision applying *Sorrell* to a commercial

---

[7] COC, for its part, argues the disclosure in § 349-a(2) is unduly burdensome because it is "designed to denigrate" products sold using algorithmic pricing. COC Br. at 9-10. COC's argument is both speculative and devoid of any authority establishing that the intended *design* of a commercial disclosure requirement renders it unduly burdensome. The Fifth Circuit recently held that the graphic warnings on cigarette packages and advertisements do not impose an undue burden given that the "plaintiffs have, *at most*, a minimal interest in not withholding useful and factual information from their customers." *RJ Reynolds*, 96 F.4th at 886 (emphasis added).

disclosure requirement. The Second Circuit has deemed *Sorrell* inapplicable even where an outright ban on commercial speech contained an exemption. *Vugo, Inc. v. City of New York*, 931 F.3d 42, 50 & n.7 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2717 (2020). *Vugo*'s holding applies even more forcefully to the disclosure in § 349-a(2).

## II.    PLAINTIFF'S OPPOSITION FURTHER DEMONSTRATES THAT THE ACT DOES NOT VIOLATE THE FIRST AMENDMENT ON ITS FACE

The cursory allegations in the Complaint fall well short of satisfying the Supreme Court's "rigorous standard" whereby a law will violate the First Amendment on its face "only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723-24 (2024). Memo. at 15-16. Plaintiff protests that facial relief is merely a "remedy" that need not be "pleaded in a complaint." Opp. at 21.

But the Second Circuit has often reviewed the sufficiency of facial constitutional claims under Rule 12(b)(6). *See Citizens United v. Schneiderman*, 882 F.3d 374, 383-84 (2d Cir. 2018); *Hudson Shore Assoc. Limited Partnership v. New York*, 139 F.4th 99, 107 (2d Cir. 2025); *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 553-55 (2d Cir. 2023). Nor has *NetChoice* altered the pleading standard in First Amendment facial challenges. *See Univ. at Buffalo Young Am. for Freedom v. Univ. at Buffalo Student Ass'n Inc.*, No. 23 Civ. 480, 2024 WL 5119779, at *30-33 (W.D.N.Y. Dec. 15, 2024) (dismissing as-applied and facial compelled speech claim). [8]

Plaintiff's assertion that its facial challenge withstands a Rule 12(b)(6) motion is also

---

[8] Plaintiff quotes from *Citizens United v. FEC*, 558 U.S. 310, 331 (2010), which analyzed whether the plaintiff had waived its First Amendment facial challenge to a campaign finance statute by earlier stipulating to the dismissal of a count alleging a facial challenge. The quoted language does not state nor even suggest that facial challenges are immune from a Rule 12(b)(6) motion, as demonstrated by the Second Circuit's recent decisions. Plaintiff also cites *Norwalk CORE v. Norwalk Redev. Agency*, 395 F.2d 920 (2d Cir. 1968), which fails to support Plaintiff's argument and was decided forty years before *Iqbal* in any case.

meritless. The sparse factual allegations are focused upon the purported impact of § 349-a(2) as applied to Plaintiff's members, while the hand-picked studies showing that algorithmic pricing is economically efficient overall do not plausibly establish the Act's unconstitutional applications substantially outweigh its constitutional ones. Memo. at 15-16. Plaintiff rehashes its argument that Defendant is raising a "factual" objection to Plaintiff's allegations that cannot be resolved on the pleadings. Opp. at 22-23. But the Second Circuit's recent decisions make clear that Plaintiff's facial challenge is ripe for dismissal on the pleadings.

## III. THE ARGUMENTS OF AMICI COP AND COC ARE MERITLESS

### A. COP's Argument Based Upon the Legislative History is Factually and Legally Baseless

COP's amicus brief criticizes the New York State Legislature for failing to "engage meaningfully" with the "benefits" of algorithmic pricing, nor the "problems" of mandatory disclosures. COP Br. at 3. COP cites to the unenacted Senate bill, S7033, which included a restriction on using "protected class data." *Id.* at 4. COP faults the Legislature for "rolling" the Senate bill into the budget bill, and for not conducting any "independent factfinding" or hearing from "experts." *Id.* Based upon its critique of the legislative process, COP asserts the Act fails to satisfy intermediate scrutiny. *Id.* at 5-7. COP's argument falters on both the facts and the law.

First, COP significantly misstates the process leading to the passage of the Act, even though Defendant's opening memorandum explained this process. Memo. at 2-4. The algorithmic pricing disclosure provision was originally proposed in January 2025 as part of the Executive Budget, along with a proposed prohibition on price discrimination based upon protected characteristics such as national origin, sex, and age. *Id.* at 2-3. A modified version of the disclosure provision was subsequently passed as part of the Executive Budget in May 2025, with the proposal on price discrimination omitted. *Id.* at 4 & n.1. A stand-alone bill, S7033, was introduced in the

Senate as the Preventing Algorithmic Pricing Discrimination Act but was not enacted. *Id.* at 3. Contrary to COP's assertion, S7033 was not the "original bill," nor was it "rolled" into the Executive Budget and made "even broader." COP Br. at 4. COP wholly misrepresents the legislative process.

COP's legal argument fares no better. COP relies upon *Edenfield v. Fane*, 507 U.S. 761 (1993) to argue the Act fails to satisfy intermediate scrutiny under *Central Hudson* because the Legislature did not "conduct any independent factfinding or hold any hearings" prior to enacting "a novel law such as this one." COP Br. at 7. *Edenfield* did critique the State of Florida for not presenting studies and noted "[t]he record does not disclose any anecdotal evidence, either from Florida or another State" to justify its ban on solicitation by accountants. 507 U.S. at 770-71.

But *Edenfield* did not hold, nor even suggest, that a state government is required to engage in "independent factfinding" or hold legislative hearings as a prerequisite to enacting a regulation of commercial speech. Indeed, any such requirement would have conflicted with prior First Amendment decisions.[9] The citations in *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995), to *Renton* and to Justice Souter's concurring opinion in *Barnes* further demonstrate that COP's position is baseless.[10] In sum, COP's brief fails to provide any factual or legal support for

---

[9] *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1986) (court of appeals finding that municipal zoning ordinance "was enacted without the benefit of studies specifically relating to the particular problems or needs" of the municipality imposed "unnecessarily rigid burden of proof," and municipality was justified in relying upon "experience of, and studies produced by" Seattle); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 567-68 (1991) (although "Indiana does not record legislative history," challenged public indecency statute "is clearly within the constitutional power of the State and furthers substantial governmental interests"); *Id.* at 582 (Souter, J., concurring) (noting "appropriate focus" was Indiana's "current governmental interest in the service of which the challenged application of the statute may be constitutional").

[10] COP cites to *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 526 (D.C. Cir. 2015) ("*NAM*"). COP Br. at 5-6. But *NAM* does not support COP's argument either, as the panel examined Congress's failure to justify the conflict mineral disclosure rule before it was enacted *or* in congressional hearings after the rule was enacted. COP also cites *Evergreen Ass'n, Inc. v. City of New York*, 740

Plaintiff's opposition to Defendant's motion to dismiss.

**B.     COC's Argument That Strict Scrutiny Applies is Inconsistent With Plaintiff's Legal Position and is Also Baseless**

COC asserts that the Act is subject to strict scrutiny because it is both content-based and even viewpoint-based. COC Br. at 2-3. COC's position does not even align with that of Plaintiff, which concedes the Act "is likely not subject to strict scrutiny under Second Circuit precedent," and that it merely seeks to "preserve" this argument. ECF No. 9-1, at 11, n. 5; COC Br. at 5, n.1 (citing Plaintiff's concession). The Complaint similarly acknowledges "neither the Supreme Court nor the Second Circuit have applied strict scrutiny to compelled commercial disclosures[.]" Compl. at ¶ 30. Even COP does not venture to expressly argue the Act is subject to strict scrutiny. COC's brief effectively supplants Plaintiff's stated legal position, which is wholly improper. Yet COC's arguments are meritless in any case.

The Supreme Court recently emphasized that strict scrutiny is reserved for "the direct targeting of fully protected speech." *Free Speech Coalition, Inc. v. Paxton*, 606 U.S.___, 145 S.Ct. 2291, 2310 (June 27, 2025). COC's brief serves to demonstrate that the Act does no such thing. First, COC argues that strict scrutiny should apply because the disclosure requirement compels Plaintiff's members to "speak a particular message" that alters the "content of their speech." COC Br. at 2-3 (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015)). However, the Second Circuit recently held that "not all laws compelling speech are subject to strict scrutiny," and that, as noted above, "mandatory disclosures in advertising" are only subject "to a level of scrutiny resembling rational basis review." *CompassCare*, 125 F.4th at 63-64.

---

F.3d 233, 250 (2d Cir. 2014) where a requirement that pregnancy service centers disclose whether they provide abortion services was subject to heightened scrutiny. But *Evergreen* in no way supports COP's assertion that disclosures that are not "bland" or "non-pejorative" are thereby subject to heightened scrutiny.

COC's quotation from *Volokh* (COC Br. at 3) is even more peculiar, as *Volokh* undermines COC's very point. The Second Circuit recited the "general[ ]" standard regarding a "content-based regulation," but then emphasized that commercial speech is subject to a "subject to a less-exacting standard of judicial scrutiny." 2025 WL 2177513, at *6-7. *Volokh* also reaffirmed *Zauderer*'s core holding that "an advertiser's constitutionally protected interests in *not* providing any particular factual information in advertising is minimal." *Id.* at *8 (cleaned up) (quoting *Zauderer*, 471 U.S. at 651) (emphasis in original). The Second Circuit's cases from this year alone belie COC's contention that the Act triggers strict scrutiny.

COC further errs in claiming the Act is content-based because it "singles out marketing communications" and does not also cover, for example, political campaign solicitations using algorithms and personal data. COC Br. at 3.[11] COC is merely arguing in a roundabout way that the Act is underinclusive by focusing upon algorithmic pricing involving a "good or service" in § 349-a(2). But "the First Amendment imposes no freestanding underinclusiveness limitation," *Vugo*, 931 F.3d at 53 (cleaned up), and COC does not even argue that the omission of solicitations for political campaigns in § 349-a(2) somehow "raise[s] doubts about whether the government is in fact pursuing the interest it invokes[.]" *Id.* (cleaned up).

More remarkable still is COC's contention that the Act is *viewpoint*-based, an "egregious" and "blatant" form of content-based discrimination. *Vidal v. Elster*, 602 U.S. 286, 293 (2024) (cleaned up). COC argues the Act "compels" businesses to advance the State's view regarding algorithmic pricing, and points to a comment made by the sponsor of the unenacted Senate bill.

---

[11] COC relies upon *Sorrell*, even though Vermont's statute "targeted a single category of speech by a single category of speaker," *Vugo*, 931 F.3d at 50, n.7, and is hardly comparable to the Act. COC also errs in citing *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020), which did not involve a commercial speech regulation in the first place.

COC Br. at 3. But COC disregards the bedrock principle that "'commercial speech…is a *hardy breed* of expression[.]'" *Connecticut Bar Ass'n*, 620 F.3d at 93 (quoting *Central Hudson*, 447 U.S. at 564, n.6) (emphasis added). COC's contention that the commercial advertisers of today are so brittle that the eleven-word, factual disclosure in § 349-a(2) constitutes an "egregious" and "blatant" form of discrimination is supported neither by law nor logic.[12] In addition, COC's attempt to divine an improper legislative purpose is baseless. *Miller v. McDonald*, 130 F.4th 258, 266-67 (2d Cir. 2025) (rejecting plaintiff's argument that immunization law was motivated by discrimination based upon comments of legislators); *Renton*, 475 U.S. at 48 (statute cannot be deemed unconstitutional "on the basis of an alleged illicit legislative motive") (cleaned up).

In sum, COC is merely repackaging Plaintiff's allegation that a commercial disclosure requirement violates the First Amendment if the speaker disagrees with the message, even though "[d]isclosure rules requiring speakers to disclose facts with which the speakers disagree are consistently found not to offend the First Amendment." *City of Rochester, N.Y.*, 731 F. Supp. 3d at 473; Memo. at 8. COC's argument thus fails to assist Plaintiff in stating a plausible claim.

## CONCLUSION

For the reasons set forth above and in the opening memorandum, Defendant respectfully requests that the Court dismiss the Complaint with prejudice, together with such other and further relief as the Court deems just and proper.

---

[12] In *Matal v. Tam*, 582 U.S. 218 (2017) and *Wandering Dago, Inc. v. Destito*, 879 F.3d 20 (2d Cir. 2018) (which COC tellingly identifies with the initials "W.D."), it was the plaintiffs that sought to use phrases considered derogatory, with the restrictions on using these phrases determined to be viewpoint-based. Both decisions are clearly inapposite.

Dated: New York, New York
        August 28, 2025

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
By:

_____/s/_____
Yuval Rubinstein
Special Litigation Counsel
28 Liberty Street
New York, New York 10005
(212) 416-8673
yuval.rubinstein@ag.ny.gov

## **CERTIFICATION**

In accordance with Rule 7.1(c) of the Local Rules of the Southern and Eastern Districts of New York, I hereby certify that the foregoing Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Complaint contains 5,154 words, exclusive of the caption, table of contents, table of authorities, and signature block, as established using the word count function of Microsoft Word.

I further certify that the Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Complaint complies with the Court's August 19, 2025 oral order granting Defendant a maximum of twenty pages.

I further certify, in accordance with Section 11 of the of the SDNY Electronic Case Filing Rules & Instructions, that I attempted to file the foregoing Reply Memorandum by the 5:00 p.m. deadline, but received a 404 error message. The Reply Memorandum was emailed to the Court prior to the 5:00 p.m. deadline pursuant to its instructions.

_____/s/_____
Yuval Rubinstein